**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| ERIC JOLLY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-1374-M |
| | § | |
| MPTC HOLDINGS, INC., and CCS | § | |
| MEDICAL, INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM OPINION**

Before the Court are Plaintiff's Motion for Partial Summary Judgment [Docket Entry #19] and Defendants' Motion for Summary Judgment [Docket Entry #30]. For the reasons explained below, Plaintiff's Motion is **GRANTED** in part and Defendants' Motion is **GRANTED** in part and **DENIED** in part.

BACKGROUND FACTS AND PROCEDURAL HISTORY

On July 14, 2004, Plaintiff Eric Jolly signed a stock purchase agreement ("SPA") with Defendant MPTC Holdings, Inc. ("MPTC") in which Jolly agreed to sell all of the outstanding shares of common stock of Gericare Providers, Inc. ("Gericare"), a medical supply company, to MPTC. Pursuant to § 2.3 of the SPA, MPTC withheld $5.5 million from the purchase price and deposited that money into an escrow account. The escrow account was established as partial security for Jolly's obligation to indemnify MPTC against any "Claims" (a term defined in the SPA) asserted against, imposed upon or incurred by MPTC, resulting from "any inaccuracy or breach of any representation or warranty" made by Jolly in the SPA.[1] Any such indemnification

---

[1] Jolly's Mot., Decl. of Eric Jolly, Ex. A at 77.

obligation arising before September 30, 2006, was to be satisfied first by payment from this escrow account.  The SPA contemplated a release of $2.5 million of the escrow to Jolly on December 31, 2005, with the remaining $3 million to be released to Jolly on September 30, 2006.  The $2.5 million was released to Jolly, but the $3 million was not.

On August 8, 2008, Jolly sued MPTC and CCS Medical, Inc. ("CCS")[2] for breach of contract, claiming that MPTC and CCS improperly blocked the release of the $3 million in escrow.  Jolly moved for partial summary judgment and MPTC and CCS cross-moved for summary judgment.  MPTC and CCS claimed that the funds properly remained in escrow because the conditions for release contained in the SPA had not been met, and CCS further claimed entitlement to judgment because it was not a party to the SPA.

On July 17, 2009, the Court stayed this matter pursuant to the automatic stay provisions of 11 U.S.C. § 362(a), in light of the filing of a voluntary bankruptcy petition by Defendants.  The stay was lifted on September 24, 2009, after the Bankruptcy Court modified the automatic stay for the limited purpose of permitting this Court to resolve the pending motions for summary judgment.

<u>ANALYSIS</u>

I.      Legal Standard

A.  Summary Judgment

Under Rule 56(c), summary judgment is warranted if the pleadings, discovery, disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[3]  The moving party bears the initial burden

---

[2] Jolly claims, upon information and belief, that MPTC does business under CCS's name and that CCS is a successor to MPTC.  *See* Jolly's Compl. at 2, 3.  For the reasons explained below, the Court finds that no claim is stated against CCS and that it is entitled to summary judgment.

[3] Fed. R. Civ. P. 56(c).

of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.[4]  Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate, by designating specific facts beyond the pleadings that prove the existence of a genuine issue of material fact.[5]  In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."[6]

B.  Choice of Law

As a federal court sitting in diversity, this Court applies the choice of law rules of the forum state.[7]  The Supreme Court of Texas has held that contractual choice of law provisions should generally be enforced, subject to the provisions of the Restatement (Second) of Conflict of Laws § 187.[8]  The SPA provides that its terms are governed by and construed in accordance with the laws of the state of Delaware.[9]  The Court finds that the exceptions contained in § 187 do not apply, and will therefore apply the parties' choice of Delaware law.

Under Delaware law, indemnity provisions are interpreted in accordance with general principles of contract law.[10]  A court must first determine whether the contractual language at

---

[4] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).

[5] *See* Fed. R. Civ. P. 56(e)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

[6] *Lynch Props.*, 140 F.3d at 625 (citation omitted).

[7] *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Cantu v. Jackson Nat'l Life Ins. Co.*, 2009 U.S. App. LEXIS 18049, at *5 (5th Cir. Aug. 12, 1998) (citing *Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990)).

[8] *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990).

[9] *See* Jolly's Mot., Decl. of Eric Jolly, Ex. A at 89.

[10] *See IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 317 (3d Cir. 2006) (applying Delaware law); *Oliver B. Cannon & Son v. Fid. & Casualty Co.*, 484 F. Supp. 1375, 1386 n.36 (D. Del. 1980) (stating that Delaware follows general common law principles of contract law); *Rexnord Indus., LLC v. RHI Holdings,*

issue is ambiguous when read in the context of the entire contract.[11]  "Ambiguity exists only

when a contractual provision is reasonably or fairly susceptible of different interpretations or

may have two or more different meanings."[12] Words should be given their ordinary meaning and

not interpreted to find an ambiguity where an objective, reasonable person would suggest that

none exists.[13] "A contract is not ambiguous merely because the parties disagree about its proper

interpretation."[14]  Further, "the mere assertion that ambiguity or divergent intent exists will not

prevent summary judgment from being entered."[15]

II.     Discussion

A.  Breach of Contract Claim

MPTC argues that it did not breach its obligations under the SPA by refusing to instruct

the escrow agent to release the $3 million remaining in escrow.  MPTC contends that because a

"Claim," as defined in the indemnity provision, was asserted prior to September 30, 2006, it was

not obligated to call for a release of the remaining escrow balance.[16]

The controversy between the parties centers on §§ 2.3 and 9.2 of the SPA and on the

Escrow Agreement between the parties.  Section 2.3 of the SPA provides:

> 2.3.     <u>Escrow Amount</u>.    Notwithstanding   anything   to   the   contrary
> contained herein, Buyer shall withhold from the Purchase Price otherwise
> payable at Closing an amount equal to $5,500,000 (the "**<u>Escrow Amount</u>**"). .

---

*Inc.*, 2008 Del. Super. LEXIS 347, at *27 (Del. Super. Sept. 17, 2008) ("Delaware law applies the general principles of contract law to indemnification agreements.") (citing *Nw. Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996)).

[11] *Trs. of Boston Univ. v. Ligand Pharms., Inc.*, 2003 U.S. Dist. LEXIS 19394, at *12 (D. Del. Oct. 30, 2003).

[12] *Id.* at *12-13 (quoting *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) (internal quotation marks omitted)).

[13] *MBIA Ins. Corp. v. Royal Indemnity Co.*, 426 F.3d 204, 210 (3d Cir. 2005) (citing *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997); *Rhone-Poulenc*, 616 A.2d at 1196).

[14] *Id.*

[15] *Trs. of Boston*, 2003 U.S. Dist. LEXIS at *13-14 (citation and internal quotation marks omitted).

[16] *See* Defs.' Br. in Support of Mot. for Summ. J. at 1.

. . Pursuant to an escrow agreement by and among Buyer [MPTC], Seller [Jolly] and Escrow Agent (the **"Escrow Agreement"**) substantially in the form annexed hereto as **Exhibit 2.3**, and subject to the terms thereof relating to the payment of Claims, $2,500,000 of the Escrow Amount will be released on December 31, 2005 with the balance of the Escrow Amount to be released on September 30, 2006. . . . The Escrow Amount will be held by the Escrow Agent as partial security for the obligations of Seller to Buyer pursuant to the terms of **Article III** and **Section 9.2** of this Agreement.[17]

Article III relates to purchase price adjustments, which are not at issue in this case.

Section 9.2 of the SPA deals with Jolly's obligation to indemnify MPTC:

9.2      Indemnification by Seller.  From and after the Closing, Seller shall indemnify and hold Buyer, its Affiliates, the Company and their respective . . . successors and assigns (collectively "**Buyer Claimants**" and individually "**Buyer Claimant**") harmless from and defend each of them from and against any and all demands, claims, actions, liabilities, losses, costs, damages or expenses whatsoever (including without limitation reasonable attorneys' fees and expenses) (collectively, "**Claims**") asserted against, imposed upon or incurred by Buyer Claimants resulting from or arising out of (i) any inaccuracy or breach of any representation or warranty [of] Seller contained herein; and (ii) any breach of any covenant or obligation [of] Seller contained herein."[18]

Section 9.4(a) further provides, in relevant part:

(a) The party seeking indemnification (the "**Claimant**") must give the other party or parties, as the case may be (the "**Indemnitor**"), prompt written notice of any such Claim.[19]

The first point of contention between the parties is whether the assertion of an indemnification claim under § 9.2 supports withholding the release of escrow funds contemplated by § 2.3.  Jolly argues that it does not, relying on the following language in § 2.3:

"Pursuant to an escrow agreement by and among Buyer [MPTC], Seller [Jolly] and Escrow Agent (the **"Escrow Agreement"**) substantially in the form annexed hereto as **Exhibit 2.3**, and *subject to the terms thereof relating to the payment of Claims*, $2,500,000 of the Escrow Amount

---

[17] Jolly's Mot., Decl. of Eric Jolly, Ex. A at 21-22 (emphases original).

[18] *Id.* at 77 (emphases original).

[19] *Id.* at 80 (emphases original).

will be released on December 31, 2005 with the balance of the Escrow Amount to be released on September 30, 2006."[20]

Jolly asserts that the word "thereof" necessarily refers to the Escrow Agreement, and then notes that there are no terms in the Escrow Agreement "relating to the payment of Claims."[21]  He therefore concludes that the release of the escrow amounts under § 2.3 is an absolute obligation that is not trumped by the indemnification provision in § 9.2 of the SPA.[22]

Under Delaware law, "[c]ontracts are to be interpreted in a way that does not render any provisions 'illusory or meaningless.'"[23]  Were the Court to accept Jolly's interpretation that "thereof" refers to the Escrow Agreement and does not incorporate § 9.2 of the SPA, the phrase "subject to the terms thereof relating to the payment of Claims" would be rendered meaningless. The resulting effect—that the indemnification obligations of § 9.2 have no effect on the release of escrow funds contemplated by SPA § 2.3 and the Escrow Agreement—would also render meaningless the escrow provision in § 2.3, which expressly states that the escrow amount would be held as partial security for the obligations of Jolly to MPTC.  The "rule of last antecedent" notwithstanding, the Court concludes that the phrase "thereof" refers to the SPA, as that is the only document that contains terms "relating to the payment Claims."[24]

---

[20] Jolly's Mot., Decl. of Eric Jolly, Ex. A at 21-22 (emphasis added).

[21] *See* Jolly's Mot., Decl. of Eric Jolly, Ex. B at 95-102.

[22] *See* Jolly's Mot. at 3 n.2; Jolly's Reply at 8.

[23] *O'Brien v. Progressive Northern Ins. Co.*, 785 A.2d 281, 287 (Del. 2001); *see also McKnight v. USAA Cas. Ins. Co.*, 871 A.2d 446, 448 (Del. Super. Ct. 2005).

[24] The grammatical "rule of the last antecedent" states that a limiting clause or phrase (here, the word "thereof") should ordinarily be read as modifying only the noun or phrase that it immediately follows (here, the "Escrow Agreement"). *See* 2A Norman J. Singer, Statutes and Statutory Construction § 47.33, p. 487 (7th ed. 2007) (citations omitted) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent"). However, courts have consistently refused to mechanically apply the rule of last antecedent where such a construction would be contrary to the contract as a whole.  *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (stating that the rule "is not an absolute and can assuredly be overcome by other indicia of meaning"); *Old Republic Ins. Co. v. Kemper Cas. Co.*, 130 F. App'x 616, 620 (3d Cir. 2005) (disapproving of the undue weight given by the Delaware Superior Court to the last antecedent rule and to "niceties of

Read together, SPA §§ 2.3 and 9.2 provide that $5.5 million of the total purchase price would be held in escrow as partial security for Jolly's obligation to indemnify MPTC against "any and all demands, claims, actions, liabilities, losses, costs, damages or expenses whatsoever . . . asserted against, imposed upon or incurred by [MPTC]" before September 30, 2006 resulting from "any inaccuracy or breach of any representation or warranty" made by Jolly in the SPA.

On September 27, 2006, MPTC sent a letter to Jolly, pursuant to § 9.4(a) of the SPA, notifying him of an alleged Claim.  Two former Gericare employees had been arrested and indicted for forgery and fraud for allegedly forging doctors' signatures in order to overbill Medicaid, Medicare, and private insurers for unnecessary medical supplies.[25]  MPTC alleged that this conduct constituted a breach of §§ 4.17(a), (b), (d) and (e) of the SPA's representations and warranties.[26]  In particular, § 4.17(e)(i) represents that no Gericare employee had made "any false statement or representation of a material fact in any application for any benefit or payment under a Governmental Medical Reimbursement Program."[27]  MPTC further alleges that, as a result of this breach, MPTC was exposed to liability and damages in any action by state or federal Medicare and Medicaid officials for recoupment of overpayments.[28]  On this basis, MPTC argues that it was not required to execute joint instructions to the escrow agent to release the remaining escrow funds.[29]

---

punctuation and sentence structure" in reaching a result that "is inconsistent with the remaining language" at issue); *E. I. du Pont de Nemours & Co. v. Green*, 411 A.2d 953, 956 (Del. 1980) (noting that "the last antecedent rule is but one of numerous rules designed to assist in the discovery of intent and is not to be inflexibly or uniformly applied").

[25] *See* Defs.' Br. in Support of Mot. for Summ. J. at 5-6.

[26] *See* Defs.' Br. in Support of Mot. for Summ. J. at 6.

[27] *See* Jolly's Mot., Decl. of Eric Jolly, Ex. A at 55.

[28] *See* Defs.' Br. in Support of Mot. for Summ. J. at 6.

[29] *See* Defs.' Resp. at 7.  MPTC appears to focus on its timely notice of the alleged Claim prior to September 30, 2006 as the reason why no release of the escrow funds was required.  *See* Defs.' Resp. at 7; Defs.' Br. in Support of Mot. for Summ. J. at 1-2, 7.  This focus on the timing of the notification misinterprets the SPA.

For § 9.2 of the SPA to apply, three things must occur: first, there must be a demand, claim, action, liability, loss, cost, damage or expense (a "Claim"); second, any such Claim must be asserted against, imposed upon, or incurred by MPTC; third, the Claim must result from, or arise out of, an inaccuracy or breach of a representation or warranty contained in the SPA. Jolly does not contest that the arrest and indictment of the Gericare employees constituted a breach of the representations and warranties in the SPA. As this proposition comports with Delaware law, the Court does not further analyze the third element.[30]

MPTC essentially presents two arguments as to why the criminal exposure of the former Gericare employees and MPTC's subsequent notice to Jolly falls within the definition of an indemnified Claim. MPTC's first argument is that "liability" has been "incurred by" MPTC because it has been exposed to "undeniable and continuing liability" for the Medicare and Medicaid overpayments resulting from the "fraudulent actions and subsequent conviction" of the Gericare employees.[31]

MPTC's argument proceeds in several steps. First, MPTC states that Gericare (and thereby MPTC) is liable to various agencies under its Medicare and Medicaid contracts for overpayments due to fraudulent billings.[32] Second, MPTC argues that the claim against Gericare

---

Notification, while required to be "prompt" under SPA § 9.4(a), is not at issue in this case. The key inquiry is whether there was an indemnified Claim prior to September 30, 2006.

[30] *See Izquierdo v. Sills*, 2004 WL 2290811, at *8 (Del.Ch. June 29, 2004) (citation omitted) (holding the employer responsible for the acts of its employees where employees, individual defendants, acted in a way that was both within the scope of their employment and in breach of an agreement between the employer and a third party). Jolly's alleged breach of warranty does not necessarily implicate his indemnity obligations. If no Claim arising from Jolly's obligations under § 9.2 was asserted against, imposed on, or incurred by MPTC before September 30, 2006, the $3 million in escrow should have been released, and failure to instruct the escrow agent to release the money was a breach of contract by MPTC. The escrow period should not be confused with the indemnity period; the two are not co-extensive. A claim for indemnification could be asserted by MPTC after September 30, 2006. The expiration of the escrow term simply means that MPTC would not have access to any escrowed amount as partial security for such a claim.[30]

[31] *See* Defs.' Br. in Support of Mot. for Summ. J. at 11. It is not clear from the record what occurred after the Gericare employees were arrested.

[32] *See* Defs.' Resp. at 3-4.

(to which MPTC succeeded) for breach of these contracts accrued when the Gericare employees

engaged in the allegedly unlawful conduct.[33]  Finally, MPTC concludes that Jolly's obligation

under the SPA accrued when MPTC incurred liability for the Gericare employees' conduct.[34]

MPTC bases this last conclusion on the strength of the assumption that, if a recoupment action

for overpayments is brought against MPTC, judgment will be entered against it because the facts

demonstrating fraudulent activity resulting in overpayments are not in dispute.[35]  This argument

requires an analysis under Delaware law.

In *Sorensen v. Overland Corporation*,[36] the court, applying Delaware law, held that an

indemnity obligation accrues when indemnitor liability "becomes fixed and ascertained."[37]  In

*Sorensen*, the liability of the indemnitor to pay for legal expenses became "fixed and

ascertained" when the indemnitee's lawyer rendered his last services and became entitled to

compensation.[38]  MPTC relies on *Sorensen* in arguing that it incurred a right to indemnity when

the Gericare employees submitted their last forged document for payment, fixing MPTC's

liability for all resulting overpayments.[39]

However, several decisions, including some interpreting *Sorensen*, make clear that

liability becomes fixed and ascertained only upon the entry of a final judgment against the

indemnitee.[40]  This was the holding of the court in *Oliver B. Cannon & Son, Inc. v. Fidelity &*

---

[33] *See id.* at 13.; Defs.' Br. in Support of Mot. for Summ. J. at 11.

[34] *See* Defs.' Resp. at 13.

[35] *See* Defs.' Br. in Support of Mot. for Summ. J. at 12.

[36] 142 F. Supp. 354 (D. Del. 1956), aff'd, 242 F.2d 70 (3d Cir. 1957).

[37] *Id.* at 361.

[38] *Id.* at 361-62 & n.35 ("When an attorney is retained for particular litigation, his right to compensation accrues when the services are concluded."  (citations omitted)).

[39] Defs.' Resp. at 13-14.

[40] In affirming the district court decision, the Third Circuit expressly avoided deciding the issue of when exactly the claim to indemnity arose.  *See Sorensen*, 242 F.2d at 73.

*Casualty Co.*,[41] which explained that "final judgment means the time when damages were finally fixed and when [the plaintiff] became finally liable to pay them."[42]

Under Delaware law, a claim for breach of contract and misrepresentation, where the indemnitee contends it was *directly* injured because of a false representation in the underlying contract, accrues on the date of the breach or injury.[43]   However, if the underlying claim for indemnification is actually a claim for losses resulting from liability to a third party, such as is the case here, the indemnity obligation does not accrue until "the last dollar of loss is ascertainable."[44]   There is no suggestion in the record that the potential loss due to a recoupment action has been ascertained.   Therefore, MPTC will not incur liability due to the Medicare and Medicaid overpayments unless and until a third party makes a claim against it.   No such claim was made as of September 30, 2006.   Until such a claim is made, MPTC has only a potential future liability, for which it is not entitled to an offset from the escrow.

MPTC argues that these cases address the question of when an indemnity cause of action accrues, not when the indemnitor's obligation arises.[45]   This is true, because the indemnification agreement itself governs when the indemnitor's obligation arises.   However, the SPA states that Jolly's obligation arises when MPTC incurs liability, among other triggering events.   Therefore, the question of when MPTC's liability accrued in a recoupment action is the same question as when Jolly's indemnification obligation accrued, and the cases discussed above are germane.

---

[41] 484 F. Supp. 1375 (D. Del. 1980).

[42] *Oliver*, 484 F. Supp. at 1389.

[43] *Certainteed Corp. v. Celotex Corp.*, 2005 Del. Ch. LEXIS 11, at *19 (Del. Ch. Jan. 24, 2005).

[44] *Id.*; *see also Seitz v. A-Del Constr. Co.*, 1987 Del. Super. LEXIS 1279, at *6-7 (Del. Super. Ct. Aug. 13, 1987) (holding that the state of Delaware would not have a claim against its co-defendants for indemnity until after the State had been held liable to the plaintiff).

[45] *See* Defs.' Resp. at 13.

Concluding that MPTC incurs liability only when a final judgment is rendered does not mean that Jolly's indemnification obligations to MPTC do not arise until a final judgment against it is rendered.  MPTC's incurrence of liability is not the only event under the SPA that can activate Jolly's indemnity obligation to MPTC.  For example, Jolly's obligation can be triggered by the assertion of a claim against MPTC, and in that case withholding from the escrow might be proper.

In fact, MPTC's second argument is that "claims have been asserted against MPTC by virtue of the actions taken against its employees."[46]  However, MPTC cites to no evidence in support of this position.  The triggering event that constitutes an "assertion against" an indemnitee is the claim against the indemnitee itself, not the actions leading up to the claim.[47]  Although MPTC anticipates possible claims by state or federal agencies arising out of alleged criminal conduct of former Gericare employees, no such claims were asserted against MPTC as of September 30, 2006.

In *Trustees of Boston University v. Ligand Pharmaceueticals, Inc.*,[48] the Delaware federal district court considered an indemnity provision very similar to this one.  The Trustees, stockholders of a company that merged into a wholly owned subsidiary of Ligand, brought suit against Ligand to force the release of purchase money withheld as partial security for claims or demands arising out of a breach of the Trustees' representations and warranties in the merger agreement.  The indemnification provision obligated the Trustees to indemnify Ligand for "any and all losses, damages, liabilities, obligations, claims, demands, judgments, settlements,

---

[46] Defs.' Br. in Support of Mot. for Summ. J. at 11.

[47] *Salaman v. Natl' Media Corp.*, 1992 Del. Super. LEXIS 564, at *16 (Del. July 22, 1994) (noting that where an indemnified event is contractually defined as "a claim asserted against" the indemnitee, the definition itself indicates that an indemnified event is a claim asserted against the indemnitee,  not  the actions leading up to the claim).

[48] 2003 U.S. Dist. LEXIS 19394 (D. Del. Oct. 30, 2003).

governmental investigations, taxes, costs and expense of any nature whatsoever . . . resulting from, arising out of or attributable to a breach of the [seller's] representations, warranties, covenants and agreements under this Agreement."[49]

Pending at the time of the Trustees' suit to recover the escrowed money was a lawsuit to enjoin the merger.  Ligand asserted that this lawsuit was a "claim" or "demand" that arose out of, or was attributable to, a breach of the Trustees' warranties and covenants under their agreement, and that Ligand was thus justified in withholding the purchase money because it might incur liabilities in the future in connection with the second lawsuit.[50]

The court held that a "claim" did not include a potential for future damages, noting that the ordinary and usual meaning of "claim" is "a demand for something due or believed to be due," which necessarily requires some present action and triggers an immediate financial obligation.[51]

MPTC argues alternatively that its notification to Jolly is a Claim.[52]  This interpretation misreads the plain language of the SPA in two ways.  First, the SPA states that the Claim must be asserted *against* MPTC.  In order for a claim to be asserted against MPTC, a third party must have directed some action at MPTC, but none did so.  The "Claim" that MPTC points to—its own notification to Jolly—was asserted *by* MPTC against Jolly.  Second, MPTC buttresses its argument by focusing on the fact that its notification to Jolly was sent before September 30, 2006.[53]  However, the key inquiry is whether there was an indemnified Claim prior to September 30, 2006.  The timing of the notification by MPTC is irrelevant to this question.

---

[49] *Id.* at *4-5.

[50] *Id.* at *6-7.

[51] *Id.* at *14-16 (quoting Merriam-Webster's Collegiate Dictionary (11th ed. 2003)).

[52] *See* Defs.' Resp. at 1-2.

[53] *See* Defs.' Resp. at 7; Defs.' Br. in Support of Mot. for Summ. J. at 1-2, 7.

The Court concludes that no Claim arising from Jolly's obligations under § 9.2 was asserted against, imposed on, or incurred by MPTC before September 30, 2006. The $3 million in escrow should have been released, and MPTC's failure to instruct the escrow agent to release the money was a breach of contract entitling Jolly to judgment as a matter of law on his breach of contract claim.[54] Jolly's Motion for Partial Summary Judgment is therefore GRANTED as to MPTC.

### B.  Obligations of Defendant CCS under the SPA

It is clear on the face of the SPA that CCS is not a party to the SPA. However, there is conflicting evidence as to whether CCS is a successor in interest to MPTC.

MPTC submits an affidavit from Stephen Saft, its Chief Financial Officer, stating that MPTC is an active corporate entity, that MPTC has not assigned or transferred any of its rights or obligations under the SPA to CCS, and that CCS is not the successor to MPTC.[55]

Jolly's Complaint alleges that CCS is a successor to MPTC Holdings.[56] In support of this allegation, Jolly includes in the evidence emails from CCS counsel Jeff Baird to Jolly's attorney, Charles Perry. In one of these emails, Mr. Baird states: "I represent CCS, a Florida-based company that sells diabetic supplies and related products throughout the country. Several years [ago], CCS became the successor-in-interest to Gericare."[57] In another email, Mr. Baird writes: "I can state that the owners of Gericare are gone, that Gericare has gone through a couple of

---

[54] *See H.M. Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003); *accord BCE Emergis Corp. v. Cmty. Health Solutions of Am., Inc.*, 148 F. App'x. 204, 215 (5th Cir. 2005) (citing *H.M. Wexford*, 832 A.2d at 140) ("By the express terms of the . . . contract at issue here, Delaware law applies to this claim. The elements of a breach of contract under Delaware law are: (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiff.").

[55] *See* Defs.' Mot., App. at 158-59.

[56] *See* Jolly's Compl. at 3 ¶ 9.

[57] Jolly's Resp., App. at 136.

ownership changes, and that Gericare has been absorbed by my client."[58]  In yet another email in the record, not cited by Jolly in this context, Mr. Baird writes: "Gericare Providers, Inc. changed its name to MP TotalCare Services, Inc.  MP TotalCare Services, Inc. is owned by MPTC Holdings, Inc.  My client, CCS Medical, Inc. ("CCS") owns MPTC Holdings, Inc."[59]

Defendants object to these email exhibits as inadmissible hearsay.  However, Mr. Baird's statements are not hearsay under Federal Rule of Evidence 801(d)(2)(D) because they were statements made by CCS's agent concerning a matter within the scope of his employment, made during the existence of that employment relationship.[60]

Although these emails are admissible, they do not show that a genuine issue of material fact exists.  Apart from a mere assertion "upon information and belief" in the Complaint that CCS is a successor in interest to MPTC, Jolly's evidence shows only that CCS is a successor in interest to *Gericare*, not to *MPTC*.  The salient issue is whether CCS is a successor in interest to MPTC, the only buyer named in the SPA.  CCS's alleged ownership of MPTC does not create an issue of material fact as to this question because CCS may own MPTC without succeeding to MPTC's rights and obligations under the SPA.

Jolly asserts that CCS has actually been the entity making the decision to have the escrow funds withheld, and that, "[o]n information and belief, CCS has actively assisted, conspired, and combined with MPTC Holdings to deprive Plaintiff of his rightful receipt of the Escrow

---

[58] *Id.* at 158.

[59] Jolly's Compl., App. at 111-12.

[60] *See* Fed. R. Evid. 801(d)(2)(D).  Several circuits have specifically interpreted this rule to include statements by attorneys.  *See Fester v. Farmer Bros. Co.*, 49 F. App'x 785, 797 (10th Cir. 2002); *Bay Area Material Handling v. United States Trustee (In re Bay Area Material Handling)*, 1996 U.S. App. LEXIS 2272, at *7 (9th Cir. 1996); *United States v. Sanders*, 979 F.2d 87, 92 (7th Cir. 1992); *Hanson v. Waller*, 888 F.2d 806, 814 (11th Cir. 1989); *Williams v. Union Carbide Corp.*, 790 F.2d 552, 555-56 (6th Cir. 1986); *United States v. Martin*, 773 F.2d 579, 583 (4th Cir. 1985); *United States v. McKeon*, 738 F.2d 26, 30 (2d Cir. 1984).

Funds."[61]

However, the only claim asserted is for breach of contract; since CCS is neither a party nor a successor to the contract, no claim can be stated against it for breach of contract.[62]  CCS's Motion for Summary Judgment on Jolly's breach of contract claim is therefore GRANTED.

### C.  Request for Continuance

In their Response to Jolly's Motion for Summary Judgment, Defendants request a continuance to engage in inter-party discovery.[63]  The Court believes that Defendants' request was rendered moot when they cross-moved for summary judgment.  Regardless, the Court concludes that a continuance is unwarranted and it is therefore DENIED.

### CONCLUSION

Jolly's Motion for Partial Summary Judgment is GRANTED as to Defendant MPTC. The Court will promptly enter judgment requiring MPTC to take all actions necessary to effect the release of the $3 million remaining in escrow.  Defendants' Motion for Summary Judgment is GRANTED as to Defendant CCS and DENIED as to Defendant MPTC.

**SO ORDERED**.

December 1, 2009.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**

---

[61] Jolly's Compl. at 3 ¶ 13; *see* Jolly's Resp. at 12.

[62] *See Wallace v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999) ("It is a general principle of contract law that only a party to a contract may be sued for breach of that contract.").

[63] *See* Defs.' Resp. at 20.

15